UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| GARY ZAGAMI, Individually and on Behalf of All Others Similarly Situated,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>WOLFSPEED, INC., GREGG A. LOWE, AND NEILL P. REYNOLDS.<br><br>　　　　　Defendants. | Case No. 6:24-cv-01395-ECC-MJK<br><br>**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO TRANSFER VENUE**<br><br>ORAL ARGUMENT REQUESTED |

**TABLE OF CONTENTS**

FACTUAL BACKGROUND AND PROCEDURAL HISTORY ................................................. 3
ARGUMENT ..................................................................................................................................... 5
   I.    THIS ACTION COULD HAVE BEEN BROUGHT IN THE MIDDLE DISTRICT OF NORTH CAROLINA. .................................................................................................................. 6
   II.   THE CONVENIENCE OF THE PARTIES AND THE INTEREST OF JUSTICE FAVOR TRANSFER. ........................................................................................................................ 7
        A.    Plaintiffs' Choice of Forum is Entitled to Minimal Deference. ............................... 7
        B.    The Convenience of the Parties and Witnesses Favors Transfer. ........................... 8
        C.    The Locus of Operative Facts and Location of Relevant Evidence Favor Transfer. ........................................................................................................................................ 10
        D.    Trial Efficiency and the Interest of Justice Favor Transfer. .................................. 13
CONCLUSION ................................................................................................................................ 14

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Ahrens v. CTI Biopharma Corp.*,
  2016 WL 2932170 (S.D.N.Y. May 19, 2016) ...................................................... 2, 11, 14

*Alpha Indus., Inc. v. Alpha Clothing Co. LLC*,
  2021 WL 2688722 (S.D.N.Y. June 30, 2021) .............................................................. 8, 10

*Berman v. Informix Corp.*,
  30 F. Supp. 2d 653 (S.D.N.Y. 1998) ................................................................................ 14

*Bristol-Myers Squibb Co. v. Superior Court of California*,
  582 U.S. 255 (2017) ............................................................................................................ 7

*Bucks County Employees Retirement System v. Norfolk Southern*,
  2023 WL 5992266 (S.D. Ohio Sept. 15, 2023) ........................................................... 2, 13

*City of North Miami Beach Police Officers' & Firefighters' Retirement Plan v. National General Holdings Corp.*,
  2019 WL 7900030 (C.D. Cal. Nov. 19, 2019) ................................................................ 12

*City of Pontiac General Employees Retirement System v. Dell Inc.*,
  2015 WL 12659925 (S.D.N.Y. Apr. 30, 2015) .......................................................... 10, 11

*City of Warren Police & Fire Retirement System v. Zebra Technologies Corp.*,
  2019 WL 3997354 (E.D.N.Y. Aug. 23, 2019) ............................................................. 7, 13

*Corley v. United States*,
  11 F.4th 79 (2d Cir. 2021) .................................................................................................. 7

*Daimler AG v. Bauman*,
  571 U.S. 117 (2014) ............................................................................................................ 6

*Dickerson v. Novartis Corp.*,
  315 F.R.D. 18 (S.D.N.Y. 2016) ......................................................................................... 9

*Erickson v. Corinthian Colleges, Inc.*,
  2013 WL5493162 (S.D.N.Y. Oct. 1, 2013) ................................................ 5, 7, 10, 11, 12

*Garity v. Tetraphase Pharmaceuticals Inc.*,
  2019 WL 2314691 (S.D.N.Y. May 30, 2019) .................................................................. 2

*Guccione v. Harrah's Marketing Services Corp.*,
  2009 WL 2337995 (S.D.N.Y. July 29, 2009) .................................................................. 10

*In re AtheroGenics Securities Litigation*,
 2006 WL 851708 (S.D.N.Y. Mar. 31, 2006) ...................................................................2

*In re Energy Transfer Securities Litigation*,
 2022 WL 17477854 (S.D.N.Y. Nov. 7, 2022) ...............................................................2, 7

*In re Global Cash Access Holdings, Inc. Securities Litigation*,
 2008 WL 4344531 (S.D.N.Y. 2008) ................................................................... 2, 10, 14

*In re Hanger Orthopedic Group, Inc. Securities Litigation*,
 418 F. Supp. 2d 164 (E.D.N.Y. 2006) ................................................................ 6, 10, 12

*In re Nematron Corp. Securities Litigation*,
 30 F. Supp. 2d 397 (S.D.N.Y. 1998) ..........................................................6, 8, 9, 10, 12

*In re Stillwater Mining Co. Securities Litigation*,
 2003 WL 21087953 (S.D.N.Y. May 12, 2003) ...............................................................7

*North Brevard County Hospital District v. C.R. Bard, Inc.*,
 648 F. Supp. 3d 401 (N.D.N.Y. Feb. 15, 2022) ................................................2, 5, 6, 8, 10

*Nuss v. Guardian Life Insurance Co. of America*,
 2021 WL 1791593 (S.D.N.Y. May 5, 2021) ...................................................................8

*Oxford v. Uddin*,
 2023 WL 9111156 (N.D.N.Y. May 5, 2023) ...............................................................5, 8

*Ruiz ex rel. E.R. v. United States*,
 2014 WL 4662241 (E.D.N.Y. Sept. 18, 2014) .................................................................9

*SBAV LP v. Porter Bancorp, Inc.*,
 2013 WL 3467030 (S.D.N.Y. July 10, 2013) ................................................................12

## DOCKETED CASES

*Ferreira v. Wolfspeed, Inc., et al.*, Case No. 6:25-cv-62 (N.D.N.Y.) ............................................4

*Lamon v. Werner*, Case No. 1:25-cv-00298 (M.D.N.C.) ........................................................5, 14

*Maizner v. Wolfspeed, Inc., et al.*, Case No. 6:25-cv-46 (N.D.N.Y.) ...........................................4

*Zagami v. Wolfspeed, Inc. et al.*, Case No. 6:24-cv-01395 (N.D.N.Y.) ........................................4

## STATUTES, RULES, AND REGULATIONS

15 U.S.C. § 78aa(a) ........................................................................................................................6

28 U.S.C. § 1391(b)(2) ..................................................................................................................6

iii

28 U.S.C. § 1404(a) ..........................................................................................1, 2, 5, 7, 8, 10, 14

1, 2, 5, 7, 8, 10, 14

Defendants Wolfspeed, Inc. ("Wolfspeed" or the "Company"), Gregg A. Lowe, and Neill P. Reynolds (together, "Individual Defendants," and together with Wolfspeed, "Defendants") respectfully move that the Court, pursuant to 28 U.S.C. § 1404(a) ("Section 1404(a)"), transfer this federal securities class action (the "Action") to the U.S. District Court for the Middle District of North Carolina ("Middle District of North Carolina"), where Wolfspeed has been incorporated and headquartered for nearly forty years and which clearly is the center of gravity of this case.

This is a securities class action on behalf of a putative nationwide class of Wolfspeed investors, challenging Defendants' financial projections and related disclosures from August 16, 2023 to November 6, 2024 ("Class Period"). The Court-appointed lead plaintiffs are Qiu Shaomei, He Jie, Cai Guangjian, and Dr. Syed M. Alam ("Lead Plaintiffs" and together with the putative class "Plaintiffs"), none of whom resides in New York. Accordingly, given that Lead Plaintiffs purport to represent a nationwide class and none resides in New York, Plaintiffs' choice of forum is entitled to little or no deference. Moreover, all the relevant considerations under Section 1404(a) point to the Middle District of North Carolina as the appropriate forum for this case: the statements at issue primarily were prepared and made in the Middle District of North Carolina; Wolfspeed is incorporated and headquartered in the Middle District of North Carolina; one of the two Individual Defendants resides in North Carolina and both Individual Defendants worked from the Middle District of North Carolina; the relevant witnesses and evidence mainly are located in the Middle District of North Carolina; and Defendants are facing a substantially similar derivative litigation in the Middle District of North Carolina.

Though the Company's Mohawk Valley silicon carbide fabrication facility (the "MVF") is located in Marcy, New York, and financial projections related to the MVF are the subject of certain challenged statements (*see, e.g.*, Am. Compl. ¶¶ 105, 113, 133), what matters for Section 1404(a)

1

purposes is that the Company prepared and then discussed those projections with investors from its headquarters in the Middle District of North Carolina.  In any event, the convenience of the parties and witnesses, and the interest of justice, strongly favor the Middle District of North Carolina and far outweigh any tangential connection to this District.

For these reasons, the Court should follow the legions of other courts in this Circuit and across the country that have transferred securities class actions to the issuer's home district.  *See, e.g.*, *In re Energy Transfer Sec. Litig.*, 2022 WL 17477854, at *4 (S.D.N.Y. Nov. 7, 2022) (transferring to district where issuer was headquartered because it was where filings were "drafted, approved, and issued"); *N. Brevard Cnty. Hosp. Dist. v. C.R. Bard, Inc.*, 648 F. Supp. 3d 401, 427 (N.D.N.Y. Feb. 15, 2022) (transferring to district where issuer was headquartered because "it is where the acts or omissions for which Defendants could be held liable occurred"); *Garity v. Tetraphase Pharms. Inc.*, 2019 WL 2314691, at *4 (S.D.N.Y. May 30, 2019) (transferring to district where issuer was headquartered because "'transfers to the issuer's home district are routine as a practical matter' in securities class actions"); *Ahrens v. CTI Biopharma Corp.*, 2016 WL 2932170, at *3 (S.D.N.Y. May 19, 2016) (transferring to issuer's home district where issuer made allegedly false or misleading statements and filings); *In re Glob. Cash Access Holdings, Inc. Sec. Litig.*, 2008 WL 4344531, at *8 (S.D.N.Y. 2008) (transferring to issuer's home district because "significant portions of the operative facts occurred [there]"); *In re AtheroGenics Sec. Litig.*, 2006 WL 851708, at *3 (S.D.N.Y. Mar. 31, 2006) (transferring to issuer's home district because it was "locus of all relevant decision making"); *see also Bucks Cnty. Emps. Ret. Sys. v. Norfolk Southern*, 2023 WL 5992266, at *7 (S.D. Ohio Sept. 15, 2023) (transferring to issuer's home district because the "nexus of the alleged activity challenged by [p]laintiff" took place at issuer's corporate headquarters, even though underlying railroad accident took place in Ohio).

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Wolfspeed specializes in the fabrication of silicon carbide materials and devices for power applications. Am. Compl. ¶¶ 23, 29; Declaration of Kevin Speirits ("Speirits Decl.") ¶ 5. Wolfspeed is incorporated and headquartered in Durham, North Carolina, which has served as the Company's corporate home since its founding nearly forty years ago in 1987. Am. Compl. ¶¶ 23, 29; Speirits Decl. ¶ 4. North Carolina is where the largest percentage of Wolfspeed's U.S.-based employees work. Speirits Decl. ¶ 6. Wolfspeed prepares its SEC filings and press releases, including financial projections, from its Middle District of North Carolina headquarters. *Id.* at ¶ 12. Wolfspeed also conducts its earnings calls from its headquarters. *Id.* at ¶ 13. Personnel in its headquarters design, review, and evaluate its internal controls over financial reporting and disclosure. *Id.* at ¶ 15. No employee involved in these matters during the Class Period resided or primarily worked in New York. *Id.* at ¶¶ 12-13, 15.

Defendant Gregg A. Lowe served as Wolfspeed's Chief Executive Officer and Director during the Class Period. Am. Compl. ¶ 24; Speirits Decl. ¶ 8. Mr. Lowe resided in North Carolina and primarily worked out of Wolfspeed's North Carolina headquarters during the Class Period, and continues to reside in North Carolina. Speirits Decl. ¶¶ 9, 17. Defendant Neill P. Reynolds served as Wolfspeed's Executive Vice President and Chief Financial Officer during the Class Period. Am. Compl. ¶ 25; Speirits Decl. ¶ 10. Mr. Reynolds resided primarily in Austin, Texas and primarily worked out of Texas and Wolfspeed's North Carolina headquarters during the Class Period. He continues to reside primarily in Texas. Speirits Decl. ¶¶ 11, 17.

The witnesses and documents likely to be relevant to the Action are also primarily located in the Middle District of North Carolina. The individuals responsible for preparing and overseeing Wolfspeed's SEC filings, press releases, and earnings call materials are all based in North

Carolina. Speirits Decl. ¶¶ 12-13, 15. The servers containing potentially relevant electronically stored information are also primarily located in Durham, North Carolina. *Id.* at ¶ 18.

On November 15, 2024, Gary Zagami filed a putative class action in this District on behalf of a nationwide class of purchasers of Wolfspeed common stock captioned *Zagami v. Wolfspeed, Inc. et al.*, Case No. 6:24-cv-01395. Dkt. No. 1 (the "*Zagami* Action"). On February 24, 2025, the Court consolidated the *Zagami* Action and two other related actions[1] and appointed Lead Plaintiffs. Dkt. No. 34. On May 5, 2025, Plaintiffs filed an amended consolidated complaint (the "Amended Complaint") asserting two federal causes of action: (1) violation of Section 10(b) of the Securities and Exchange Act of 1934 ("Exchange Act") and Rule 10b-5 promulgated thereunder; and (2) control person liability under Section 20(a) of the Exchange Act. Am. Compl. ¶ 1. Plaintiffs' fundamental claim is that certain of Defendants' statements during the Class Period were materially false or misleading because Defendants allegedly misrepresented or omitted material information concerning Wolfspeed's financial projections, including information about the operational status and profitability of the MVF. *See*, *e.g.*, Am. Compl. ¶¶ 115, 131, 137. To support their claims, Plaintiffs cite the allegations of just two former Wolfspeed employees— Former Employee ("FE") 1, who purportedly worked as a Global Cost Accounting Director in the Company's North Carolina headquarters, and FE2, whose work location is not given, but who Plaintiffs allege was a Financial Analyst working for the Company's "Discrete Power Devices" business unit and reported to Hunter Lane, Senior Finance Director, Power, who is based in Durham, North Carolina. Am. Compl. ¶¶ 52, 55-56; Speirits Decl. ¶¶ 16-17. Plaintiffs do not allege that either FE has any connection to New York. Moreover, none of the additional Wolfspeed employes identified in the Amended Complaint reside or work in New York. Speirits Decl. ¶ 16.

---

[1] *Maizner v. Wolfspeed, Inc., et al.*, Case No. 6:25-cv-46 (N.D.N.Y. Jan. 8, 2025) and *Ferreira v. Wolfspeed, Inc., et al.*, Case No. 6:25-cv-62 (N.D.N.Y. Jan. 13, 2025).

4

On April 21, 2025, a purported Wolfspeed shareholder filed a derivative suit in the Middle District of North Carolina captioned *Lamon v. Werner*, Case No. 1:25-cv-00298 (M.D.N.C. April 21, 2025) asserting several causes of action, including alleged breach of fiduciary duties and a violation of Section 14(a) of the Exchange Act (the "Derivative Action"). That action substantially overlaps with this one, recasting the securities claims as breach of fiduciary duty claims against Wolfspeed's Board of Directors.

## ARGUMENT

28 U.S.C. § 1404(a) permits transfer to another jurisdiction if "(1) the action . . . might have been brought in the transferee venue; and (2) . . . the balance of convenience and justice factors transfer." *N. Brevard Cnty. Hosp. Dist.*, 648 F. Supp. 3d at 413. The Court has "broad discretion" to consider the totality of the circumstances and determine whether transfer promotes "convenience and fairness" in any given case. *Id.* at 419; *see also Oxford v. Uddin*, 2023 WL 9111156, at *2 (N.D.N.Y. May 5, 2023) (adopting magistrate judge's conclusion that transfer was appropriate in the interest of justice).

Both inquiries support transfer here for the reasons outlined below. The Action undisputably could have been brought in the Middle District of North Carolina, where Wolfspeed is, and always has been, incorporated and headquartered, where the operative facts took place, and where the relevant witnesses and evidence are located. For these same reasons, transfer also clearly promotes "convenience and fairness." *N. Brevard Cnty. Hosp. Dist.*, 648 F. Supp. 3d at 419. Finally, in this nationwide class action where no Lead Plaintiff resides in New York, Plaintiffs' choice of forum is entitled to little or no deference. *See Erickson v. Corinthian Colls., Inc.*, 2013 WL5493162, at *2 (S.D.N.Y. Oct. 1, 2013) ("[T]he weight accorded to a plaintiff's choice of forum is reduced in a stockholder class action, where members of the class are dispersed

5

throughout the nation"); *N. Brevard Cnty. Hosp. Dist.*, 648 F. Supp. 3d at 420 (finding that "plaintiff's choice of forum is a less significant consideration in . . . a class action").

## I. THIS ACTION COULD HAVE BEEN BROUGHT IN THE MIDDLE DISTRICT OF NORTH CAROLINA.

First, venue is proper in the Middle District of North Carolina because pursuant to Section 27 of the Exchange Act, "[a]ny suit or action to enforce any liability or duty created by this chapter or rules and regulations thereunder . . . may be brought in any such district or in the district wherein the defendant is found or is an inhabitant or transacts business." 15 U.S.C. § 78aa(a). As discussed above, Wolfspeed is incorporated and headquartered in the Middle District of North Carolina, and always has been, Mr. Lowe resides in North Carolina, and both Mr. Lowe and Mr. Reynolds worked from the Middle District of North Carolina. Speirits Decl. ¶¶ 9, 11, 17. Section 27 of the Exchange Act also provides that venue is proper in in the district where "any act or transaction constituting the violation occurred." 15 U.S.C. § 78aa(a); *see also* 28 U.S.C. § 1391(b)(2) ("A civil action may be brought in . . . a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred"). Here, the Individual Defendants made the bulk of the challenged statements during earnings calls originating from the Middle District of North Carolina. And the underlying securities filings are "deemed to occur" in that District because Wolfspeed is headquartered there. *In re Hanger Orthopedic Grp., Inc. Sec. Litig.*, 418 F. Supp. 2d 164, 169 (E.D.N.Y. 2006) (citing *In re Nematron Corp. Sec. Litig.*, 30 F. Supp. 2d 397, 404 (S.D.N.Y. 1998)).

Second, because it is incorporated in North Carolina and maintains its principal place of business in the Middle District, Wolfspeed and the Individual Defendants who were its principal executive officers are subject to personal jurisdiction there. Speirits Decl. ¶ 3; *Bristol-Myers*

6

*Squibb Co. v. Super. Ct. of Cal.*, 582 U.S. 255, 262 (2017); *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014).[2]

## II. THE CONVENIENCE OF THE PARTIES AND THE INTEREST OF JUSTICE FAVOR TRANSFER.

The second prong of the Section 1404(a) transfer inquiry examines "whether transfer is appropriate." *In re Energy Transfer Sec. Litig.*, 2022 WL 17477854, at *1. In conducting this examination, courts consider: "(1) the plaintiff's choice of forum, (2) the convenience of witnesses, (3) the location of relevant documents and relative ease of access to sources of proof, (4) the convenience of parties, (5) the locus of operative facts, (6) the availability of process to compel unwilling witnesses, and (7) the relative means of the parties, (8) the forum's familiarity with the governing law, and (9) trial efficiency and (10) the interest of justice, based on the totality of the circumstances." *City of Warren Police & Fire Ret. Sys. v. Zebra Techs. Corp.*, 2019 WL 3997354, at *4 (E.D.N.Y. Aug. 23, 2019). The particulars of a case impact which factors warrant more—or less—weight. *See Corley v. United States*, 11 F.4th 79, 89 (2d Cir. 2021).

### A. Plaintiffs' Choice of Forum is Entitled to Minimal Deference.

In a nationwide class action like this one, where class members are located throughout the country, a plaintiff's choice of forum is afforded little or no deference. *See In re Energy Transfer Sec. Litig.*, 2022 WL 17477854, at *2 (finding that weight afforded to plaintiff's choice of forum is reduced when plaintiff represents geographically dispersed class); *City of Warren Police & Fire Ret. Sys.*, 2019 WL 3997354, at *4 (similar); *Erickson*, 2013 WL5493162, at *2 ("a plaintiff's choice of forum is reduced . . . in a stockholder class action, where members of the class are dispersed throughout the nation"); *In re Stillwater Mining Co. Sec. Litig.*, 2003 WL 21087953, at *5 (S.D.N.Y. May 12, 2003) (collecting cases).

---

[2] In addition, Mr. Lowe resides in North Carolina. Speirits Decl. ¶¶ 9, 17.

7

In addition, "courts routinely afford less weight to a plaintiff's choice of forum where the plaintiff does not reside in that forum and there is no meaningful connection to the claims." *Oxford*, 2023 WL 9111156, at *2. None of the four Court-appointed Lead Plaintiffs resides in New York. Messers. Qiu Shaomei, He Jie, and Cai Guangjian reside in China and Dr. Syed M. Alam resides in Georgia. *See* Am. Compl. ¶ 22 (citing to Dkt. No. 18 Exhibit D (Declaration of Dr. Syed M. Alam in Support of Lead Plaintiff Motion); Dkt. No. 19 Exhibit D (Joint Declaration of Qiu Shaomei, He Jie, and Cai Guangjian in Support of Lead Plaintiff Motion)).[3] Moreover, as explained in detail below, there is no meaningful connection between the claims at issue and this District.

### B.  The Convenience of the Parties and Witnesses Favors Transfer.

The Middle District of North Carolina is the decidedly more convenient forum for the parties and witnesses.

The "core determination" under Section 1404(a) is where the "center of gravity of the litigation" is located. *N. Brevard Cnty. Hosp. Dist.*, 648 F. Supp. 3d at 422; *see also Alpha Indus., Inc. v. Alpha Clothing Co. LLC*, 2021 WL 2688722, at *6 (S.D.N.Y. June 30, 2021). To determine an action's "center of gravity," courts often start by looking to the "parties' principal places of business, the location of their offices, or their residences." *Nuss v. Guardian Life Ins. Co. of Am.*, 2021 WL 1791593, at *5 (S.D.N.Y. May 5, 2021). As a result, the convenience of the parties and witnesses "is probably considered the single most important factor in the analysis of whether

---

[3] Although this Court did not appoint him as a Lead Plaintiff, the Amended Complaint names William Maizner as a "plaintiff" and alleges that Mr. Maizner "is domiciled in Dix Hills, New York," likely to bolster the appearance of a connection to New York, though Dix Hills is located on Long Island in the Eastern District of New York, far from this District. Am. Compl. ¶ 20. Even if his domicile were considered, it would not change the analysis. As noted above, given that this is a securities class action, a plaintiff's residence "has diminished relevance." *In re Nematron Corp. Secs. Litig.*, 30 F. Supp. 2d at 407 (transferring securities class action from New York notwithstanding that plaintiff resided in New York). More importantly, the other relevant factors overwhelmingly favor transfer.

transfer should be granted." *Ruiz ex rel. E.R. v. United States*, 2014 WL 4662241, at *11 (E.D.N.Y. Sept. 18, 2014).

The "center of gravity" in this Action is undoubtedly the Middle District of North Carolina. Wolfspeed is incorporated in North Carolina and has its principal place of business in the Middle District. *See* Am. Compl. ¶ 23; *see also* Speirits Decl. ¶ 3. Mr. Lowe resides in North Carolina and worked out of Wolfspeed's headquarters for the duration of the Class Period. Speirits Decl. ¶¶ 9, 17. While Mr. Reynolds primarily resides in Austin, Texas, he frequently traveled to and worked out of Wolfspeed's headquarters during the Class Period, and intends to move to North Carolina in late 2025 in connection with new employment. *Id.* at ¶¶ 11, 17. Lead Plaintiffs on the other hand are spread out and have no apparent ties to New York. *Supra* at p. 8. They also seek to represent a class of shareholders that almost certainly span the country and beyond, making New York no more convenient for Plaintiffs than any other jurisdiction. *Supra* at p. 7. Transferring the case to the Middle District of North Carolina thus would significantly reduce the burden, cost, and travel time required for Defendants, while imposing no additional burden on Plaintiffs. When, like here, "transfer would increase convenience to the moving party without generally increasing inconvenience to the non-movant," transfer is favored. *Dickerson v. Novartis Corp.*, 315 F.R.D. 18, 29 (S.D.N.Y. 2016).

The Middle District of North Carolina is also the most convenient forum for the potential witnesses. Courts generally recognize that securities class actions "focus almost entirely on the defendants' conduct." *In re Nematron Corp. Sec. Litig.*, 30 F. Supp. 2d at 402. As such, the important witnesses likely will be those current and former Wolfspeed employees with key responsibilities related to the Company's public disclosures and financial projections during the Class Period. Speirits Decl. ¶¶ 12, 15. Those employees overwhelmingly are located in the Middle

9

District of North Carolina. *Id.* For these reasons, courts "routinely transfer cases when the principal events occurred, and the principal witnesses are located, in another district." *N. Brevard Cnty. Hosp. Dist.*, 648 F. Supp. 3d at 422 ("[T]he core determination under § 1404(a) is the center of gravity of the litigation, a key test of which is the convenience of witnesses."); *In re Glob. Cash Access Holdings, Inc., Sec. Litig.*, 2008 WL 4344531, at *4 (granting transfer in part because the "events giving rise to this case support the defendants' general assertion that a substantial number of potential material witnesses reside in [transferee district]").

### C. The Locus of Operative Facts and Location of Relevant Evidence Favor Transfer.

The Middle District of North Carolina is also the "center of gravity" of the Action because the "operative events" underlying the Action took place there. *Alpha Indus., Inc.*, 2021 WL 2688722, at *6 ("The location of the operative events is a primary factor in determining a Section 1404(a) motion to transfer . . . Both this factor and the location of material witnesses bear on where the 'center of gravity' of the action rests."). The location of the "operative events" is the "site of events from which the claim arises." *Guccione v. Harrah's Mktg. Servs. Corp.*, 2009 WL 2337995, at *8 (S.D.N.Y. July 29, 2009). It is well-settled that in a securities case like this one, the "events" from which Plaintiffs' claim arises are Defendants' alleged misrepresentations and omissions, and that the alleged misrepresentations and omissions occur in the "district where they are transmitted or withheld, not where they are received." *In re Hanger Orthopedic Group, Inc. Sec. Litig.*, 418 F. Supp. 2d at 169 (citing *In re Nematron Corp. Sec. Litig.*, 30 F. Supp. 2d at 404); *see also City of Pontiac Gen. Emps. Ret. Sys. v. Dell Inc.*, 2015 WL 12659925, at *6 (S.D.N.Y. Apr. 30, 2015) (quoting *In re Hanger Orthopedic Grp., Inc. Sec. Litig.*, 418 F. Supp. 2d at 169) (same); *Erickson*, 2013 WL 5493162, at *6 (same).

Nearly all the statements at issue in this Action emanated from Wolfspeed's headquarters in the Middle District of North Carolina. The Amended Complaint primarily challenges statements made in earnings calls and investor conferences during the Class Period. The earnings calls originated from Wolfspeed's headquarters in Durham, and the Wolfspeed personnel participating in those calls mostly were based in, and participating primarily from, that location. Speirits Decl. ¶ 13. Moreover, Wolfspeed's underlying SEC filings, projections, and press releases were prepared at, and issued from, its North Carolina headquarters. *Id.* at ¶ 12.[4] Personnel primarily based at Wolfspeed's headquarters designed, reviewed, and evaluated Wolfspeed's internal controls over financial reporting and disclosure. *Id.* at ¶ 15. Plaintiffs also challenge statements Wolfspeed made at three investor conferences: the Morgan Stanley Technology, Media & Telecom Conference 2024 on March 4, 2024, the JPMorgan Global Technology, Media and Communications Conference 2024 on May 20, 2024, and the Citi 2024 Global TMT Conference on September 4, 2024. *See* Am. Compl. ¶¶ 141, 154, 177. These conferences were held in San Francisco, Boston, and New York City, respectively. Speirits Decl. ¶ 14. Thus, only one of nine sets of challenged statements was made in New York (but in the Southern District, not this District). The location of the operative statements clearly warrants transfer to the case's "center of gravity" in the Middle District of North Carolina. *See, e.g.*, *Ahrens*, 2016 WL 2932170, at *4 (transferring securities class action to district from which company issued its allegedly misleading SEC filings); *City of Pontiac Gen. Emps. Ret. Sys.*, 2015 WL 12659925, at *6 (finding transfer to district of issuer's corporate headquarters was appropriate because allegedly violative press releases and public filings were drafted, approved, and disseminated from issuer's headquarters); *Erickson*, 2013 WL 5493162, at *6 (granting transfer to issuer's home district and reasoning that

---

[4] These filings and press releases formed the basis of each of the quarterly earnings calls at issue in the Amended Complaint, all of which originated from the Company's Durham, North Carolina headquarters. Speirits Decl. ¶ 13.

11

"locus of operative events in a securities action is where the alleged misrepresentations were made"); *SBAV LP v. Porter Bancorp, Inc.*, 2013 WL 3467030, at *4-5 (S.D.N.Y. July 10, 2013) (transferring to district where issuer was headquartered because alleged misrepresentations were made in that district); *In re Hanger Orthopedic Grp., Inc. Sec. Litig.*, 418 F. Supp. 2d at 171 (transferring to district where issuer was headquartered because "center of gravity" of operative facts occurred where defendants issued allegedly false or misleading statements); *In re Nematron Corp. Sec. Litig.*, 30 F. Supp. 2d at 404 (granting transfer after finding that "locus of operative facts" was district where "financial statements were prepared").

For the same reasons, most potentially relevant documents are in the Middle District of North Carolina. Securities fraud litigation produces a significant amount of documentation, substantially all of which comes from Defendants. *See Erickson*, 2013 WL 5493162, at *5. Defendants' potentially relevant electronically stored information is primarily located on servers in Durham, North Carolina. Speirits Decl. ¶ 18. This factor also weighs heavily in favor of transfer. *See In re Hanger Orthopedic Grp. Inc. Sec. Litig.*, 418 F. Supp. 2d at 167 (granting transfer where vast majority of documents on which statements were based, e-mail servers, electronic databases, and central accounting systems were located in transferee district); *see also City of N. Miami Beach Police Officers' & Firefighters' Ret. Plan v. Nat'l Gen. Holdings Corp.*, 2019 WL 7900030, at *3 (C.D. Cal. Nov. 19, 2019) (granting transfer where majority of company's potentially relevant hard copy documents, individual hard drives, and electronically stored information was located on servers in transferee district).

The fact that the MVF is located in Marcy, New York does not alter the analysis. While the MVF's profitability and production factored into Wolfspeed's projections and were the topic of certain challenged statements, the Amended Complaint is about the *statements* themselves, not

12

any conduct occurring at the MVF facility. As explained, those statements overwhelmingly emanated from the Middle District of North Carolina, and the Company developed the underlying projections and financial analysis at corporate headquarters in that District. *Bucks County Employees Retirement System v. Norfolk Southern Corp.* is instructive. 2023 WL 5992266 (S.D. Ohio Sept. 15, 2023). There, plaintiffs alleged the defendant railroad's statements about safety were false and misleading as evidenced by a railroad accident in Ohio. *Id.* at *2. Plaintiffs also challenged statements about the accident itself. *Id.* Notwithstanding these (and other alleged) connections to Ohio, the court transferred to the defendant's home district in Georgia, because Ohio had "no gravitational pull over this litigation" and the "balance of factors strongly justifie[d]" transfer to the issuer's home jurisdiction. *Id.* at *3. Similarly, plaintiffs in *City of Warren Police & Fire Retirement System v. Zebra Technologies Corp.* brought a securities class action against an Illinois company in New York premised on alleged misstatements published by the issuer regarding the acquisition of a company located in New York. *See* 2019 WL 3997354, at *1 (E.D.N.Y. Aug. 23, 2019). Plaintiffs alleged that the "entire case concerns the integration of [acquiree], which was headquartered in [New York]" and therefore the "conduct underlying the statements at issue likely took place in [New York.]" *Id.* at *6. Despite this alleged connection to New York, the Court granted transfer to the defendant's home state of Illinois, where the challenged statements were prepared, issued, and made. *Id.* ("The fact that some of the challenged statements concern the integration of [acquiree], which is based in [New York], does not change the fact that the statements and omissions originated in Illinois.").

### D. Trial Efficiency and the Interest of Justice Favor Transfer.

Finally, the Derivative Action in the Middle District of North Carolina further supports transferring in the interest of justice. The Derivative Action essentially recasts the securities claims

13

here as breach of fiduciary duty (and related) claims against the Wolfspeed Board of Directors. *See* Compl., *Lamon v. Werner*, Case No. 1:25-cv-00298 (M.D.N.C. Apr. 21, 2025). Thus, that action will involve substantially the same witnesses and evidence as this one and potentially poses a risk of inconsistent rulings. Transfer to permit coordination between the cases thus would promote judicial efficiency. *See Ahrens*, 2016 WL 2932170, at *4 (finding transfer "will promote trial efficiency and the interests of justice" when defendants faced federal litigation in a parallel case in the transferee District); *In re Glob. Cash Access Holdings, Inc. Sec. Litig.*, 2008 WL 4344531, at *8 (granting transfer of securities class action to jurisdiction where related derivative litigation was pending); *Berman v. Informix Corp.*, 30 F. Supp. 2d 653, 660 (S.D.N.Y. 1998) ("[t]rying all the related actions in [the transferee district] is far more efficient than allowing separate actions to proceed in" two separate districts).

## CONCLUSION

For the forgoing reasons, Defendants respectfully request that, pursuant to 28 U.S.C. § 1404(a), the Court enter an Order transferring this Action to the United States District Court for the Middle District of North Carolina.

Dated: June 4, 2025                    Respectfully submitted,


                                                                       /s/ *Michael G. Bongiorno*
Michael G. Bongiorno (*admitted pro hac vice*)
    New York Bar Number: 4347316
Tamar Kaplan-Marans (*admitted pro hac vice*)
    New York Bar Number: 4864385
Nicole Prunetti (*admitted pro hac vice*)
    New York Bar Number: 5570510

WILMER CUTLER PICKERING HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
Tel.: (212) 230-8800
Fax: (212) 230-8888
Michael.Bongiorno@wilmerhale.com
Tamar.Kaplan-Marans@wilmerhale.com
Nicole.Prunetti@wilmerhale.com

*Counsel for Defendants Wolfspeed, Inc., Gregg A. Lowe, and Neill P. Reynolds*

15