# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK

Gary Zagami, Individually and
on behalf of All Others Similarly Situated,

|  |  |  |
|---|---|---|
| | Plaintiff, | 6:24-CV-1395 |
| v. | | (ECC/MJK) |

Wolfspeed, Inc., Gregg A. Lowe, and
Neill P. Reynolds,

Defendants.

---

William Maizner, Individually and
on behalf of All Others Similarly Situated,

|  |  |  |
|---|---|---|
| | Plaintiff, | 6:25-CV-00046 |
| v. | | (ECC/MJK) |

Wolfspeed, Inc., Gregg A. Lowe, and
Neill P. Reynolds,

Defendants.

---

Luis Ferreira, Individually and
on behalf of All Others Similarly Situated,

|  |  |  |
|---|---|---|
| | Plaintiff, | 6:25-CV-00062 |
| v. | | (ECC/MJK) |

Wolfspeed, Inc., Gregg A. Lowe, and
Neill P. Reynolds,

Defendants.

---

1

Korr Value, LP,

                            Plaintiff,        6:25-CV-1448
                v.                            (ECC/MJK)

Gregg A. Lowe, Neill P. Reynolds, and
John Does Nos. 1-10,
                            Defendants.

Alan I. Ellman, Esq., Attorney for Lead Plaintiffs (Zagami Action)
Tamar Kaplan-Marans, Esq., Attorney for Defendants (Zagami and
Korr Value Action)
Baruch S. Gottesman, Esq., Attorney for Plaintiff (Korr Value Action)


Mitchell J. Katz, U.S. Magistrate Judge


## MEMORANDUM-DECISION AND ORDER

On November 15, 2024, Gary Zagami filed a putative class action

bearing civil case number 6:24-CV-1395 (ECC/MJK) on behalf of a

nationwide class of purchasers of Wolfspeed, Inc.'s ("Wolfspeed")

common stock.  (Zagami Action, Dkt. 1). On February 24, 2025, the

Court consolidated 6:24-CV-1395  and two other related actions[1]

(collectively referred to as the "Zagami Action") and appointed Qiu

---

[1] *Maizner v. Wolfspeed, Inc., et al.*, Case No. 6:25-CV-00046 (N.D.N.Y. Jan. 8, 2025)
and *Ferreira v. Wolfspeed, Inc., et al.*, Case No. 6:25-CV-00062 (N.D.N.Y. Jan. 13,
2025).

Shaomei, He Jie, Cai Guangjian, and Dr. Syed M. Alam as lead

plaintiffs ("Lead Plaintiffs") in the Zagami Action. (Zagami Action, Dkt.

34). On May 5, 2025, Lead Plaintiffs in the Zagami Action filed an

Amended Consolidated Complaint (the "Amended Complaint") asserting

two federal claims: (1) violation of Section 10(b) of the Securities and

Exchange Act of 1934 ("Exchange Act") and Rule 10b-5; and (2) control

person liability under Section 20(a) of the Exchange Act. Am. (Zagami

Action, Dkt. 57 Amended Compl., ¶ 1).

On June 4, 2025, Defendants in the Zagami Action filed a motion

under 28 U.S.C. § 1404 to transfer venue of the action from the

Northern District of New York to the Middle District of North Carolina.

(Zagami Action, Dkt. 59). Lead Plaintiffs filed a response in opposition

to the motion (Dkt. 61) and Defendants filed a reply (Zagami Action,

Dkt. 65).[2] On October 2, 2025, U.S. District Judge Elizabeth Coombe

referred Defendants' motion to transfer venue to this Court for

---

[2] On June 30, 2025, Wolfspeed commenced a case under chapter 11 of Title 11 of the
United States Code, 11 U.S.C. §§ 101 *et seq.* by filing a voluntary petition in the
United States Bankruptcy Court for the Southern District of Texas, Houston
Division. (Dkt. 63). The automatic stay imposed by Bankruptcy Code § 362
terminated on September 29, 2025 when Wolfspeed emerged from bankruptcy. (Dkt.
66).

3

decision.[3] (Zagami Action, Dkt. 67). The Court heard oral argument on October 29, 2025.

On October 16, 2025, an action titled *Korr Value, L.P. v. Gregg A. Lowe, Neill P. Reynolds, and John Does 1-10*, 6:25-CV-1448 (AJB/TWD) ("Korr Value Action") was commenced in the Northern District of New York. (Korr Value Action, Dkt. 1). The Korr Value Action is not a putative class action. On November 11, 2025, Defendants Lowe and Gregg filed a Notice of Related Case in the Korr Value Action noting the "similarity of facts and legal issues" with the Zagami Action. (Korr Value Action, Dkt. 6). On November 18, 2025, Judge Coombe deemed the Korr Value Action related to the Zagami Action. (Korr Value Action, Dkt. 8). On November 21, 2025, this Court issued a text order in the Korr Value Action directing Korr Value, L.P. ("Korr Value") to submit a memorandum of law and declaration(s) no later than December 1, 2025 stating its position why the Korr Value Action should not be transferred to the Middle District of North Carolina. (Korr Value Action, Dkt 10). Korr Value was instructed that its submission should not include any

---

[3] A motion to transfer venue is a non-dispositive matter under 28 U.S.C. § 636. *See White Mop Wringer Co. of Can. V. BT Capital Partners*, No. 95-CV-565 (RSP/DS), 1997 WL 222380, (N.D.N.Y. Apr. 29, 1997).

arguments already advanced by Lead Plaintiffs in the Zagami Action. (*Id.*). Defendants Lowe and Reynolds were given leave to file a response by December 8, 2025 limited to the arguments advanced in Korr Value's submission. (*Id.*). The parties in the Korr Value Action timely filed their submissions. (Korr Value Action, Dkts. 17, 25).[4]

The Court will incorporate the facts of the Zagami Action and the Korr Value Action as necessary in its discussion below.

For the reasons discussed herein, Defendants' motion in the Zagami Action to transfer venue from the Northern District of New York to the Middle District of North Carolina is granted. The Court is also *sua sponte* transferring venue of the Korr Value Action from the Northern District of New York to the Middle District of North Carolina.[5]

---

[4] In its Memorandum of Law, Korr Value states that it "agrees with the arguments set forth by Lead Plaintiffs in the class action and adopts those arguments as its own." (Korr Value Action, Pl. Br., Dkt. 17, at 1).

[5] "Even if venue is proper, a district court may *sua sponte* transfer an action in the interest of justice and for the convenience of the parties and witnesses to any other district where it might have been brought." *Sanchez v. Howard,* No, 9:24-1327 (CFH), 2024 WL 5319099, at *1 (N.D.N.Y. Nov. 2024) (citing 28 U.S.C. § 1404(a)).

I.    **LEGAL STANDARD**

28 U.S.C. §1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."

There is no *per se* rule requiring or presumptively favoring the transfer of a securities-fraud action to the district where the issuer is headquartered. *See In re Geopharma, Inc. Sec. Litig.,* No. 04-CV-9463, 2005 WL 1123883, at *1 (S.D.N.Y. May 11, 2005). Nevertheless, as a practical matter, such transfers are routine. *See In re Energy Transfer Sec. Litig.*, No. 22-CV-4614, 2022 WL 17477854, at *4 (S.D.N.Y. Nov. 7, 2022) (transferring to district where the issuer was headquartered because it was where the filings were "drafted, approved, and issued"); *see also N. Brevard Cnty. Hosp. Dist. v. C.R. Bard, Inc.*, 648 F. Supp. 3d 401, 427 (N.D.N.Y. Feb. 15, 2022) (transferring to district where the issuer was headquartered because "it is where the acts or omissions for which Defendants could be held liable occurred"); *Garity v. Tetraphase Pharms. Inc.*, No. 1:19-CV-06797, 2019 WL 2314691, at *4 (S.D.N.Y.

May 30, 2019) (transferring to the district where the issuer was headquartered because "'transfers to the issuer's home district are routine as a practical matter' in securities class actions"); *Ahrens v. CTI Biopharma Corp.*, No. 16-CV-1044, 2016 WL 2932170, at *3 (S.D.N.Y. May 19, 2016) (transferring to the issuer's home district where issuer made allegedly false or misleading statements and filings). Since motions to transfer are decided on a case-by-case basis, there is no single explanation for this result. Rather, as articulated below, several factors usually lean in favor of transfer.

"The purpose of section 1404(a) is to prevent the waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *View 360 Sols. LLC v. Google, Inc.*, No. 1:12-CV-1352 (GTS/TWD), 2013 WL 12130430, at *4 (N.D.N.Y. Aug. 13, 2013) (quoting *Flaherty v. All Hampton Limousine, Inc.*, No. 01-CV-9939, 2002 WL 1891212, at *1 (S.D.N.Y. Aug. 16, 2002)) (internal quotation marks omitted). "When considering whether to transfer a case, a district court must conduct a two-part test: (1) whether the action to be transferred might have been brought in the transferee venue; and (2) whether the balance of convenience and

justice favors transfer." *View 360 Sols. LLC,* 2013 WL 12130430, at *4 (internal quotation marks omitted).

### A. Might Have Been Brought

"To establish that an action might have been brought in the transferee venue, the moving party must establish that (a) venue is proper in the transferee venue; and (b) the transferee venue had personal jurisdiction over the defendant on the date the action was commenced." *North Brevard County Hospital District,* 648 F.Supp.3d at 413 (citations omitted).

### B. Whether the balance of convenience and justice favors transfer

"Once it has been established that the action might have been brought in the transferee district, the resolution of a motion to transfer venue lies within the broad discretion of the district court and [is] determined upon notions of convenience and fairness on a case-by-case basis." *View 360 Sols.*, 2013 WL 12130430, at *4 (internal quotation marks omitted). "The moving party has the burden of demonstrating the desirability of transfer, and a court should not disturb a plaintiff's choice of forum unless Defendants make a clear and convincing showing

that the balance of convenience favors [their] choice." *North Brevard County Hospital District,* 648 F.Supp.3d at 419 (citations omitted).

In considering whether transfer would promote convenience and justice, district courts have "broad discretion," and consider transfer requests "on a case-by-case basis." *D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 106 (2d Cir. 2006) (citing *In re Cuyahoga Equip. Corp.,* 980 F.2d 110, 117 (2d Cir.1992)); *see also Red Bull Associates v. Best Western Int'l*, 862 F.2d 963, 967 (2d Cir. 1988) ("Section 1404(a) reposes considerable discretion in the district court to adjudicate motions for transfer according to an individualized, case-by-case consideration of convenience and fairness.") (internal citation omitted). Courts often weigh the following factors in exercising this discretion: (1) the plaintiff's choice of forum, (2) the convenience of witnesses, (3) the location of relevant documents and relative ease of access to sources of proof, (4) the convenience of the parties, (5) the locus of operative facts, (6) the availability of process to compel the attendance of unwilling witnesses, and (7) the relative means of the parties. *See D.H. Blair & Co.*, 462 F.3d at 106–07. There is no strict formula for the application of these factors, and no single factor is determinative. *See Ward v.*

*Stewart*, 133 F. Supp. 3d 455, 460 (N.D.N.Y. 2015) (citation omitted).

"In addition to these factors, courts specifically consider judicial

economy and the interests of justice i[n] deciding transfer motions."

*Campbell v. Synchrony Bank*, No. 1:17-CV-80 (MAD/DJS), 2018 WL

8731545, at *3 (N.D.N.Y. Sept. 13, 2018) (citations omitted).

I.    **DISCUSSION**

   A. **The Zagami Action and Korr Value Action could have
      been brought in the Middle District of North Carolina**

The Zagami Action and Korr Value Action could have been

brought in the Middle District of North Carolin where Wolfspeed is

incorporated and headquartered, where most of the alleged omissions

and misrepresentations emanated, and where relevant witnesses and

evidence are located. (Zagami Action, Def. Br., Dkt. 59-1, at 5). Further,

because it is incorporated in North Carolina and maintains its principal

place of business in the Middle District of North Carolina, Wolfspeed

and the individual Defendants who were its principal executive officers,

are subject to personal jurisdiction there. (*Id.*).

Having determined that the Zagami Action and Korr Value Action

could have been brought in the Middle District of North Carolina, the

Court will proceed to analyze the factors enumerated in *D.H. Blair & Co.*[6]

### B. Plaintiffs' choice of forum is afforded diminished weight

"A plaintiff's choice of forum is generally entitled to considerable weight and should not be disturbed unless the balance of the factors is strongly in favor of the defendant." *In re Hanger Orthopedic Grp., Inc. Sec. Litig.*, 418 F. Supp. 2d 164, 170 (E.D.N.Y. Feb. 28, 2006) (quoting *Berman v. Informix Corp.,* 30 F.Supp.2d 653, 659 (S.D.N.Y. 1998)). "However, when the plaintiff does not reside in the chosen forum, and the plaintiff's chosen forum has no material connection to the facts or issues of the case, that weight is diminished." *Id.* (quoting *Cali v. East Coast Aviation Servs., Ltd.,* 178 F. Supp. 2d 276, 292 (E.D.N.Y. 2001)); *see also Oxford v. Uddin,* No. 5:22-cv-1315 (BKS/ATB), 2023 WL 9111156, at * 2 (N.D.N.Y. May 5, 2023) (Courts also "routinely afford less weight to a plaintiff's choice of forum" where "the plaintiff does not reside in that forum and there is no meaningful connection to the claims"). Further, a plaintiff's forum choice is "a less significant

---

[6] "When considering whether to transfer *sua sponte*, courts follow the same traditional analysis used when a party moves for a change of venue." *Sanchez*, 2024 WL 5319099, at *1.

consideration in a … class action than in an individual action." *Warrick v. General Elec. Co.*, 70 F.3d 736, 741 n.7 (2d Cir. 1995). Where a plaintiff class is widely dispersed, a plaintiff's forum choice is given less deference. *See In re Geopharma, Inc.*, 2005 WL 1123883, at *1 (citation omitted). However, "[a]ffording less deference to representative plaintiffs does not mean they are deprived of all deference in their choice of forum." *DiRienzo v. Philip Servs. Corp.*, 294 F.3d 21, 28 (2d Cir. 2002).

The Lead Plaintiffs in the Zagami Action do not reside in New York and they seek to represent a class dispersed throughout the United States. (Zagami Action, Pl. Br., at 6). Similarly, Plaintiff in the Korr Value Action "does not 'reside' in this District, or even in the State of New York." (Korr Value Action, Def. Br., at 2). Korr Value has its "principal place of business" in "Sussex County in the State of Delaware." (*Id.*) (citing Compl., Dkt. 1, at ¶ 19).

In these circumstances, the Court affords Plaintiffs' choice of forum diminished weight.

### C.    Convenience of the witnesses favors transfer in the Zagami Action and Korr Value Action

"The convenience to non-party witnesses is usually the most important factor to consider in deciding whether to depart from the plaintiff's choice of venue." *In re Hanger Orthopedic Grp., Inc. Sec. Litig.*, 418 F. Supp. 2d at 168 (citation omitted).

To establish that the location of the non-party witnesses supports transfer, "the movant must supply an affidavit identifying witnesses and the probable subject matter of their testimony." *Pall Corp. v. PTI Techs., Inc.*, 992 F. Supp. 196, 201 (E.D.N.Y. 1998) (citation omitted). "Because of the importance of this factor, the party seeking transfer must clearly specify the key witnesses to be called and make a general statement of what their testimony will cover." *Excelsior Designs, Inc. v. Sheres*, 291 F. Supp. 2d 181, 185-86 (E.D.N.Y. 2003) (internal quotation marks omitted) (quoting *Royal & Sunalliance. v. British Airways*, 167 F. Supp. 2d 573, 577 (S.D.N.Y. 2001)); *see also Factors Etc., Inc. v. Pro Arts Inc.*, 579 F.2d 215, 218 (2d Cir. 1978) ("When a party seeks the transfer on account of the convenience of witnesses under § 1404(a), he must clearly specify the key witnesses to be called and must make a general statement of what their testimony will cover."), *overruled on*

*other grounds* by *Pirone v. MacMillan, Inc.*, 894 F.2d 579 (2d Cir. 1990); *YLD Ltd. v. Node Firm, LLC*, 2016 WL 183564, at *2 (S.D.N.Y. Jan. 14, 2016) ("[T]he movant must identify material witnesses and supply a general description of what their testimony will cover.").

The declaration submitted by Kevin Speirits ("Speirits Declaration") in the Zagami Action identifies thirteen (13) witnesses, including himself, eleven of whom are non-party witnesses. Ten of the non-party witnesses live in North Carolina, one lives in Tennessee, one lives in New York, and one lives in Texas. (Zagami Action, Speirits Decl., § 17). The Speirtis Declaration identifies numerous material non-party witnesses and provides a general description of what their testimony will address. (*Id.*). According to the Speirits Declaration, these individuals "most likely will have knowledge concerning Wolfspeed's SEC filings, financial projections, and earnings calls …" (*Id.*).

Lead Plaintiffs in the Zagami Action, on the other hand, submit the declaration of attorney Alan I. Ellman ("Ellman Declaration") who identifies Michael Welch, CPA, Neil Reitmeyer, Doug Collignon, and Nick O'Donnell as potential witnesses. (Zagami Action, Ellman

14

Declaration, Dkt. 62, at ¶¶ 2, 3, 4, 5). These individuals purportedly <u>still work</u> at the MVF. (*Id.*, Exhibits 1, 2, 3, 4). However, the "current and former Wolfspeed employees mentioned by name in the Amended Complaint do not reside or work in New York." (Zagami Action, Speirits Decl., ¶ 16). Specifically, current employees Matthew Bolick and Hunter Lane live in North Carolina, and former Wolfspeed employee Chuck Burnside lived in North Carolina. (*Id.*). Unlike the Speirits Declaration, the Ellman Declaration does not provide any indication as to what the individuals identified therein will testify about.

The affidavit submitted by Kenneth Orr ("Orr Affidavit") in the Korr Value Action also runs afoul of the requirement enunciated in *Pall Corp.* His affidavit contains no information whatsoever about what areas of inquiry his testimony will cover. (Korr Value Action, Dkt. 17-1). The Orr Affidavit merely states that he is the "CEO of KORR Acquisitions, Inc., which is the General Partner of the Plaintiff KORR Value, LP and is individually a limited partner of the Plaintiff KORR Value, LP." (*Id*, at ¶ 2). This is not enough.

The Court finds that the convenience of the non-party witnesses in the Zagami Action and Korr Value Action favors transfer of this action to the Middle District of North Carolina.

## C. The convenience to the parties in the Zagami Action and Korr Value Action favors transfer to the Middle District of North Carolina

While Lead Plaintiffs in the Zagami Action contend that the Northern District of New York is the more convenient forum because the MVF is in the Northern District of New York, the Court notes that they themselves are not residents of New York. (Zagami Action, Def. Br., at 6). And, significantly, Lead Plaintiffs in the Zagami Action are simply that - representatives of a putative class which will likely be "geographically dispersed throughout the United States." *In re Hanger Orthopedic Grp., Inc. Sec. Litig.*, 418 F. Supp. 2d at 169 (quoting *Blass v. Capital Inter. Security Group*, No. 99-CV-5738, 2001 WL 301137, at *5 (E.D.N.Y. Mar. 23, 2001)). Logically, some, if not most, of the class will be inconvenienced whether this action proceeds in the Northern District of New York or in the Middle District of North Carolina.

Similarly, Plaintiff in the Korr Value Action is not a resident of New York, but rather a resident of the State of Delaware. (Korr Value

16

Action, Compl., Dkt. 1, at ¶ 19). In support of its argument, Korr Value

argues that the convenience of the parties favors venue in the Northern

District of New York because its attorney works in New York State.

(Korr Value Action, Pl. Br., at 2). Korr Value's argument in this regard

is wrong. *See Steck v. Santander Consumer USA Holdings., Inc.,* No. 14-

CV-6942, 2015 WL 3767445, at *6 (S.D.N.Y. Jun. 17, 2015) (courts "give

little or no weight to attorney convenience); *see also Azari v. B&H Photo

Video*, No. 06-CV-7825, 2007 WL 13101, at *3 (S.D.N.Y. Jan. 3, 2007)

(stating that the "location of counsel . . . is not a consideration in a

motion to transfer venue"). Korr Value also argues that venue should

remain in the Northern District of New York because "a key witness",

Kenneth Orr, lives and works in New York State. (Korr Value Action,

Pl. Br., at 4). Mr. Orr's presence is New York, on balance, is not enough

to carry the day.

Unlike the Plaintiffs in either action, defendants in both actions

are primarily located in the Middle District of North Carolina.

Wolfspeed is incorporated and headquartered in Durham, North

Carolina (Zagami Action, Speirits Decl., ¶ 5). Defendant Lowe resided

in North Carolina during the "Class Period" and continues to reside in

North Carolina. (Zagami Action, Speirits Decl., ¶¶ 9, 17), Defendant Reynolds resided primarily in Austin, Texas and primarily worked out of Texas and Wolfspeed's North Carolina headquarters during the "Class Period and continues to primarily reside in Texas. (Zagami Action, Speirits Decl., ¶¶ 11, 17). Defendants in the Zagami Action and Korr Value Action therefore have a compelling argument that the Middle District of North Carolina is the more convenient venue for them. Defendants' claim is compelling because many of the individuals identified in the Speirits Declaration are inextricably involved with Wolfspeed's financial affairs. (Zagami Action, Speirits Decl., ¶17).

On balance, the Court finds that this factor favors transfer of the Zagami Action and Korr Value Action to the Middle District of North Carolina.

### D. The location of relevant documents and relative ease of access to sources of proof favors transfer of the Zagami Action and Korr Value Action to the Middle District of North Carolina

"Notwithstanding the development of secure document-transfer technology, laying venue in the district in which most of the documentary evidence resides can reduce the costs and burdens of litigation." *North Brevard County Hospital District,* 648 F.Supp.3d. at

425 (citing *Andrews v. A.C. Roman & Assocs., Inc.*, 914 F. Supp. 2d 230, 239 (N.D.N.Y. 2012)) ("Although the location of relevant documents may be of less significance in light of modern copying and reproduction techniques, it nonetheless retains some relevance to the venue inquiry.").

The Speirits Declaration notes that "all documents relevant to Wolfspeed's representations to the investing public concerning its financial condition and prospects or general financial reporting are generated, issued, and stored at Wolfspeed's principal place of business in Durham, North Carolina." (Zagami Action, Speirits Decl., ¶ 18). Further, the Speirits Declaration states that "servers containing potentially relevant electronically sored information are located primarily in Durham, North Carolina. (*Id.*)

In opposition, Lead Plaintiffs in the Zagami Action advance three arguments. First, they claim that "it is far from clear that most potentially relevant documents are in fact in North Carolina, given that MVF is based in this District and it was MVF's operation and performance that formed the basis for the alleged misstatements. (Zagami Action, Pl. Br., at 24). The Court rejects this argument because

it ignores the fact that the underlying issue in this case is the veracity and accuracy of Wolfspeed's financial reporting. While the underlying data is generated in the Northern District of New York, the reporting of that data emanated from Durham, North Carolina.

The complaints in the Zagami Action and Korr Value Action allege that the statements (prepared and made from North Carolina) misrepresented the performance at MVF. There are no allegations that the performance data was inaccurate. In fact, plaintiffs in both actions allege that the actual performance at MVF, which is apparently known to them, was materially different than that which was represented by Wolfspeed's leadership team. In other words, there are no allegations that the underlying MVF data was altered or fabricated; simply misrepresented. Thus, the presence of MVF within this District is simply not a compelling fact.

Second, Lead Plaintiffs in the Zagami Action rely on a string of cases for the proposition that Courts in this Circuit "do not view [the locations of the documents] as particularly significant given the technological age in which we live, with the widespread use of, other things, electronic document production." *EasyWeb Innovtions, LLC v.*

20

*Facebook, Inc.*, 888 F.Supp2d 342, 352 (E.D.N.Y. 2012); *see also*

*Guardian Life Ins. Co. of Am. V. Hernandez*, No. 11-CV-2114, 2011 WL

3678134, at *3 (S.D.N.Y. Aug. 22, 2011) ("Because modern technology

has made the transportations of documents relatively easy, Defendants

must make a convincing showing they will suffer any real hardship in

moving documents to this District … [T]he transportation of documents

in the era of the flash drive, the CD, and the Internet is no longer a

hardship for anyone.").

Finally, Lead Plaintiffs in the Zagami Action assert that

Defendants failed to specify "the nature and volume of the documents to

be produced that would make document production easier in North

Carolina, nor have they identified any problems with sharing these

documents." (Zagami Action, Pl. Br., at 24-25). *See Colour & Design v.*

*U.S. Vinyl Mfg. Corp.*, No. 04-CV-8332, 2005 WL 1337864, at *4

(S.D.N.Y. June 3, 2005) ("[Given] defendants' failure to specify the

nature and volume of the documents they plan to use in support of their

case, or the difficulty in transporting such documents, this factor weighs

against transfer."). While Lead Plaintiffs' second and third arguments

are well taken, the considerations they point to are not determinative of this factor.

On balance, this factor slightly favors transferring venue to the Middle District of North Carolina where most of the relevant documents are likely located. *See Garity v. Tetraphase Pharmaceuticals,* No. 18-CV-06797, 2019 WL 2314691 (S.D.N.Y. 2019) (Court found this factor slightly weighed in favor of transfer even in an era of electronic documents).

### E.    The locus of the operative facts is in the Middle District of North Carolina

"The location of the operative events is a primary factor in determining a § 1404(a) motion to transfer." *Everlast World's Boxing Headquarters Corp. v. Ringside, Inc.*, 928 F. Supp. 2d 735, 745 (S.D.N.Y. March 4, 2013) (quoting *Smart v. Goord*, 21 F. Supp. 2d 309, 316 (S.D.N.Y. Aug. 19, 1998)). Both this factor and the location of "material witnesses" bear on where the "center of gravity" of the action rests. *See Am. Steamship Owners Mut. Prot. & Indem. Ass'n, Inc. v. Lafarge N. Am., Inc.*, 474 F. Supp. 2d 474, 485 (S.D.N.Y. 2007), *aff'd sub nom. N.Y. Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.*, 599 F.3d 102 (2d Cir. 2010). The location of the "operative events" is "the site of

events from which the claim arises." *Guccione v. Harrah's Marketing Services Corp.*, No. 06-CV-4361, 2009 WL 2337995, at *8 (S.D.N.Y. July 29, 2009) (quoting *800–Flowers, Inc., v. Intercontinental Florist, Inc.* 860 F.Supp. 128, 134 (S.D.N.Y. Aug. 4, 1994)); *see also North Brevard Cnty. Hosp. Dist.*, 648 F.Supp.3d at 401 (transfer motion granted where locus of operative facts was in Salt Lake City). "Misrepresentations and omissions are deemed to 'occur' in the district where they are transmitted or withheld, not where they are received." *See Ventricelli v. Nicklin*, No. 1:19-CV-0239 (GTS/DJS), 2020 WL 132334, at *12 (N.D.N.Y. Jan. 13, 202) (quoting *Mazuma Holding Corp.*, v. *Bethke*, 1 F. Supp. 3d 6, 31 (E.D.N.Y. 2014) (quoting *Purcell Graham, Inc. v. National Bank of Detroit*, 93-CV-8786, 1994 WL 584550, at *4 [S.D.N.Y. Oct. 24, 1994]) (finding transfer of venue appropriate where material acts and omissions underlying plaintiff's complaint occurred in transferee district).

In support of their motion, Defendants in both actions maintain that the alleged statements and misrepresentations at issue emanated from Wolfspeed's headquarters in the Middle District of North Carolina. (Zagami Action, Def. Br., at 16). The complaints in the Zagami Action

and Korr Value Action primarily challenge statements made in earnings calls and investor conferences during the Class Period. The 2023 and 2024 earnings calls originated from Wolfspeed's headquarters in Durham, North Carolina, and Wolfspeed's personnel participating in those calls were mostly based in and participating primarily from that location. (Zagami Action, Speirits Decl. ¶ 13.) Also, Wolfspeed's underlying SEC filings, projections, and press releases were prepared at, and issued from, its North Carolina headquarters. (*Id.* at ¶ 12). Wolfspeed's entire Internal Audit team, except for two members, work and reside in Durham, North Carolina. (*Id.* at ¶ 15). According to the Speirits Declaration, the Internal Audit team designed, reviewed, and evaluated Wolfspeed's internal controls over financial reporting and disclosure. (*Id.*).

Lead Plaintiffs in the Zagami Action also challenge statements made by Wolfspeed at three investor conferences: the Morgan Stanley Technology, Media & Telecom Conference 2024 on March 4, 2024, the JPMorgan Global Technology, Media and Communications Conference 2024 on May 20, 2024, and the Citi 2024 Global TMT Conference on September 4, 2024. (Zagami Action, Am. Compl. ¶¶ 141, 154, 177).

These conferences were held in San Francisco, Boston, and New York City, respectively. (Zagami Action, Speirits Decl. ¶ 14.) Although one of the challenged statements was made in New York, it was made in the Southern District, not in the Northern District of New York.

In opposition, Lead Plaintiffs in the Zagami Action allege that the locus of the operative facts is in Marcy, New York because "the underlying conduct that rendered those statements materially false and misleading occurred in material part in this District." (Zagami Action, Pl. Br., at 20). Alternatively, Lead Plaintiffs in the Zagami Action contend that the "locus of the operative facts is split between this District and North Carolina. (*Id.* at 21).

Lead Plaintiffs' arguments are not persuasive because they focus on the manufacturing activity itself or purported lack thereof at the MVF. Again, the manufacturing activity itself is not at issue. The Amended Complaint in the Zagami Action alleges that MVF's performance data was not accurately represented in the statements made by Wolfspeed in large part from Durham, North Carolina. The data is located in North Carolina and is probably also available at MVF.

Those financial reporting activities occurred primarily in Durham, North Carolina.

The location of the operative events in the Zagami Action and Korr Value Action warrants transfer to the cases' "center of gravity" in the Middle District of North Carolina. *See*, *e.g.*, *Ahrens*, 2016 WL 2932170, at \*4 (transferring securities class action to district from which company issued its allegedly misleading SEC filings); *see also Erickson v. Corinthian Colleges, Inc.*, No. 13-CV-4308, 2013 WL 5493162, at \*6 (S.D.N.Y. Oct. 1, 2013) ("The locus of operative events in a securities action is where the alleged misrepresentations were made. In a securities lawsuit, the alleged misrepresentations are deemed to occur in the district where the misrepresentations are issued or the truth is withheld, not where the statements at issue are received." (citations, internal quotation marks, and alternation omitted)).

The Court therefore finds that this factor warrants transfer of the Zagami Action and Korr Value Action  to the Middle District of North Carolina.

**F. The availability of process to compel the attendance of unwilling witnesses does not favor transfer of the Zagami Action or the Korr Value Action to the Middle District of North Carolina**

Defendants do not address this factor, presumably because it does not support their argument that transfer to the Middle District of North Carolina is warranted. Lead Plaintiffs in the Zagami Action correctly note that Defendants do not identify any witnesses who would be unwilling to travel to the Northern District of New York. (Zagami Action, Pl. Br., at 25). Lead Plaintiffs in the Zagami Action also correctly contend that any "third-party witnesses who are unwilling to appear (in the Northern District of New York) can be adequately questioned through deposition testimony." (*Id.)*

The Court therefore finds that this factor does not favor transfer of the Zagami Action or Korr Value Action to the Middle District of North Carolina. *See Mazuma Holding Corp.,* 1 F. Supp.3d at 31.

**G. The relative means of the parties does not favor transfer of the Zagami Action or Korr Value Action to the Middle District of North Carolina**

"Where a disparity exists between the means of the parties ... the court may consider the relative means of the parties in determining where a case should proceed." *Zaltz v. JDATE*, 952 F. Supp. 2d 439, 463

(E.D.N.Y. 2013) (citation and quotation marks omitted); *see also AIG Fin. Prods. Corp. v. Public Utility Dist. No. 1 of Snohomish Cnty., Wash.,* 675 F. Supp. 2d 354, 372 (S.D.N.Y. 2009) ("In determining whether the relative means of the parties weighs in favor of transfer, a court should determine whether a party's financial situation would meaningfully impede its ability to litigate this case in either forum." (citation and internal quotation marks omitted)).

However, as in this case, where proof of disparate means is not adequately provided, or does not exist, this is not a significant factor to be considered. *See Neil Bros. Ltd. v. World Wide Lines, Inc.,* 425 F. Supp. 2d 325, 331 (E.D.N.Y. 2006) ("A party arguing for or against a transfer because of inadequate means must offer documentation to show that transfer (or lack thereof) would be unduly burdensome to his finances.") (citation and internal quotation marks omitted)).

Here, Defendants make no showing that any financial hardship would result from litigating this action in the Northern District of New York. The Court therefore finds that this factor does not favor transfer of either the Zagami Action or the Korr Value Action.

## H. The interests of justice and judicial economy favor transfer of the Zagami Action and Korr Value Action to the Middle District of North Carolina

Reliance by Defendants in the Zagami Action on a pending derivative action (*Lamon v. Werner*, No. 1:25-cv-00298 (M.D.N.C.)) in the Northern District of North Carolina that is substantially similar to the action in this Court as a basis for granting their motion is moot. On October 22, 2025, Lead Plaintiffs in the Zagami Action filed a letter with the Court advising that the derivative action in the Middle District of North Carolina was voluntarily dismissed, as the claims raised therein were released in Wolfspeed's Chapter 11 Plan of Reorganization. (Zagami Action, Dkt. 68).

Notwithstanding the dismissal of the derivative action, the Court finds that the interests of justice and judicial economy favor a transfer of the Zagami Action and Korr Value Action to the Middle District of North Carolina. Both actions are still at preliminary stages and no answers or motions to dismiss have been filed. Pursuant to the parties' joint stipulation (Zagami Action, Dkt. 43) and the Court's March 3, 2025 text order (Zagami Action, Dkt 46) in the Zagami Action, Defendants have sixty (60) days after the issuance of this Memorandum-Decision

and Order to file their motion to dismiss. None of the parties in either the Zagami Action or the Korr Value Action will be prejudiced by duplicative briefing if the cases are transferred because no motions or answers have yet been filed. Further, and as more fully discussed above, the Northern District of New York's nexus to this case is minimal.

On balance, the Court finds that this factor favors transfer of the Zagami Action and Korr Value Action.

## III.  <u>CONCLUSION</u>

The Zagami Action and Korr Value actions involve non-New York plaintiffs, North Carolina based defendants, and allege conduct that primarily occurred in North Carolina, and not in the Northern District of New York. Nine of the non-party witnesses, and documents, are located in the Middle District of North Carolina, and not in the Northern District of New York. (Zagami Action, Speirits Decl., ¶ 17). Also, the convenience of the parties, locus of operative facts, the interests of justice, and judicial economy all weigh in favor of transfer. Accordingly, the Court concludes that Defendants in the Zagami Action and Korr Value Action have made a clear and convincing showing that

the balance of convenience factors favors transferring both actions to the Middle District of North Carolina.

**WHEREFORE**, based on the findings above, it is hereby

**ORDERED**, that Defendants' motion in the Zagami Action under 28 U.S.C. § 1404 to transfer venue of the Zagami Action (6:24-CV-1395, 6:25-CV-00046 and 6:25-CV-00062) from the Northern District of New York to the Middle District of North Carolina (Dkt. 59) is **GRANTED**, and it is further

**ORDERED**, that the Court is *sua sponte* transferring the Korr Value Action (6:25-CV-1448) to the Middle District of North Carolina, and it is further

**ORDERED,** that pursuant to 28 U.S.C. § 1406(a), the Clerk shall transfer the Zagami Action (6:24-CV-1395, 6:25-CV-00046 and 6:25-CV-00062) and the Korr Value Action (6:25-CV-1448) to the United States District Court for the Middle District of North Carolina; and it is further

**ORDERED**, that the Clerk of this Court advise the Clerk of the Court for the Middle District of North Carolina of the entry of this Order and provide all information necessary for the Clerk of the Middle District of

North Carolina to electronically access the documents filed in the Zagami

Action (6:24-CV-1395, 6:25-CV-00046 and 6:25-CV-00062) and Korr Value

Action (6:25-CV-1448).

December 22, 2025.

                             _____

                             Hon. Mitchell J. Katz
                             U.S. Magistrate Judge